UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-22884-ALTMAN/REID

R PALACE SURFSIDE, LLC,

    Plaintiff,

v.

ANAMAR VENTURES, INC. *et al*.,

    Defendants.

_____/

**ORDER ON DEFENDANTS' MOTIONS TO QUASH SERVICE OF PROCESS AND PLAINTIFF'S MOTION TO UNWIND FRAUDULENT MORTGAGE TRANSACTION AND REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO ENJOIN DEFENDANTS FROM ATTEMPTING TO SLANDER TITLE**
**[ECF NOS. 13, 14, AND 22]**

This cause is before the Court on Defendants Anamar Ventures, Inc. ("Anamar") and Red Diamond, LLC's ("Red Diamond") Motions to Quash Service of Process [ECF Nos. 13 and 14] and Plaintiff R Palace Surfside's ("R Palace") Motion to Unwind Fraudulent Mortgage Transaction and Enjoin Defendants from Attempting to Slander Title to the Unit [ECF No. 22] (collectively, the "Motions"). The Court held a hearing on October 11, 2023, regarding the Motions. [ECF No. 30]. Having heard from the parties and reviewed the Motions and responses, it is **ORDERED AND ADJUDGED** that Anamar and Red Diamond's Motions to Quash Service [ECF Nos. 13 and 14] and R Palace's Motion to Unwind [ECF No. 22] are **DENIED**. It is **RECOMMENDED** that R Palace's Motion to Enjoin Defendants (filed contemporaneously with the Motion to Unwind at ECF No. 22) be **GRANTED.**

**BACKGROUND**

1

This is an action to enforce an Interim Arbitration Award issued on June 6, 2023. [ECF No. 1-1 at 6]. The Arbitration Proceeding stems from R Palace's unsuccessful attempt to purchase Unit 29 at the Regent Palace Condominium located in Surfside, Florida (the "Unit") from Anamar, a BVI Company and owner of the Unit. R Palace controls the Regent Palace Condominium Association due to its ownership of several units. [ECF No. 23 at 2]. The Declaration of Condominium states that the Condominium can be dissolved, and the approving owners of the Association can have the option to purchase, all the Units of non-consenting owners, so long as three-fourths of the Association approves. [*Id.*]. The voting interest of more than three-fourths of the membership subsequently voted in favor of terminating the condominium, and R Palace exercised its option to purchase the Unit for $880,000. [*Id.*]. R Palace and Anamar could not agree on the price of the Unit, so the Arbitration Proceeding followed pursuant to Section 21.2(B) of the Declaration of Condominium. [*Id.*].

The Arbitration Proceeding commenced on March 28, 2022, and hearings were held through April 17, 2023. [ECF No. 16 at 1]. Anamar was represented by Yeda Cristina Manzalli de Sa ("Manzalli"), a Brazilian lawyer and then director of Anamar. Manzalli is not a U.S. lawyer, but she nevertheless represented Anamar *pro se* throughout the proceeding. [*See* transcript excerpts, ECF No. 16 at 2–3].

The Arbitrator issued an Interim Award on June 6, 2023, requiring R Palace to pay $955,000 for the Unit. [ECF No. 1-1 at 6]. R Palace deposited the funds into its counsel's Trust Account in accordance with the Interim Award. [ECF No. 1-1 at 12]. When Anamar failed to proceed with the transaction, R Palace filed suit in state court on June 26, 2023, seeking confirmation and enforcement of the Interim Award, specific performance, quiet title, and declaratory judgment. [ECF No. 1-1]. R Palace attempted to serve Anamar's registered agent and

Red Diamond's principal place of business through registered mail. [ECF Nos. 16-4 at 2 and 17-4 at 2]. After receiving no response, R Palace served Manzalli, in her capacity as director of Anamar and Red Diamond, on July 4, 2023, at the Unit. [ECF Nos. 13-2 and 14-1]. Defendants removed the case to federal court on August 2, 2023. [ECF No. 1].

On August 31, 2023, a Final Award was issued, denying Anamar's request for attorneys' fees and ordering R Palace to pay the arbitration expenses and costs, which R Palace also promptly paid. [ECF No. 23 at 3].

Rather than comply with the findings and orders of the Arbitrator, during the Arbitration Proceeding, Defendants took actions which are the crux of the issues before the Court. First, on February 10, 2023—while the Arbitration Proceeding was pending—Anamar transferred title of the Unit to Red Diamond,[1] a Nevis LLC, for $100. [ECF No. 17 at 2; *See also* Corrected Quit Claim Deed, ECF No. 20-9 at 4]. According to Manzalli's affidavit, she claimed she was the director of Red Diamond but resigned from her position at Red Diamond on February 8, 2022.[2] [ECF No. 20-1 at 2]. She also claimed she resigned her post as director of Anamar on December 5, 2022, appointing Red Diamond as her replacement. [ECF Nos. 20-1 at 1 and 20-2]. In short, according to Defendants, Red Diamond was the corporate director of Anamar as of December 5, 2022, and as such, Red Diamond—not Manzalli—transferred title of the Unit during the

---

[1] Anamar's corporate documents show "Red Diamond Co. Ltd.," not Defendant "Red Diamond, LLC.," was appointed as director of Anamar. [ECF No. 16-2 at 2]. Separately, the February 10, 2023 Quit Claim Deed identifies Defendant "Red Diamond LLC, a Nevis limited liability company" as grantee. [ECF No. 17-2 at 2]. Apart from a brief reference in Defendants' Reply, neither party addressed this discrepancy in the corporate name. [ECF No. 20 at 2]. The Court will therefore refer to both entities as "Red Diamond."

[2] Red Diamond's Certificate of Incumbency states that Red Diamond's current manager is Jonathan Hamilton Downs. [ECF No. 20-8 at 7]. Curiously, his date of appointment is February 8, **2023**, while Manzalli's affidavit and the Red Diamond board of directors meeting minutes state that he was appointed on February 8, **2022**. [ECF Nos. 20-6 and 20-1 at 2].

3

Arbitration Proceeding. Nevertheless, Manzalli's affidavit and letters of resignation are inconsistent with certified copies of BVI official corporate records which list the director of Anamar as of June 19, 2023 (identifying Manzalli as director) and August 17, 2023 (identifying Red Diamond as director). [ECF Nos. 16-1 and 16-2]. The Court will analyze this inconsistency in the following section.

Second, on August 7, 2023, Red Diamond gave Manzalli a mortgage on the Unit for the sum of $2.24 million. *See* Corrected & Re-Recorded Mortgage (the "Mortgage"). [ECF No. 19-1]. This Mortgage is the basis for R Palace's Motion to Unwind, which allegedly encumbered the Unit after the Arbitration Proceedings had concluded. [ECF No. 22].

Despite Manzalli's claims that she had resigned from directorship in Anamar, Plaintiff produced two documents from the Arbitration Proceeding dated July 10, 2023, and August 21, 2023, in which Manzalli purports to sign filings in the Arbitration on behalf Anamar. [ECF No. 33 at 2].

Defendants Anamar and Red Diamond each filed motions to quash service of the complaint in this case [ECF Nos. 13 and 14] and Plaintiff has moved to unwind the fraudulent mortgage and enjoin Defendants from mortgaging the Unit [ECF No. 22].

## **ANALYSIS**

Generally, service of process must comply with Rule 4 of the Federal Rules of Civil Procedure in diversity cases. *See S-Fer Int'l, Inc. v. Stonesheets, LLC*, 14-24662-CIV, 2016 WL 8808748, at *3 (S.D. Fla. Jan. 19, 2016) (citing *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1357 (11th Cir. 2014)) (stating that, when a case arises under diversity jurisdiction, "it is well established that the court is to apply state substantive law and federal procedural law."). But "[a] federal court may consider the sufficiency of process after removal and does so by looking to the

4

state law governing process." *Gonzalez v. Bar*, 4:20-CV-10121-KMM, 2021 WL 8825440, at *8 (S.D. Fla. Mar. 29, 2021) (quoting *Usatorres v. Marina Mercante Nicaraguenses, S.A.*, 768 F.2d 1285, 1286 (11th Cir. 1985)). Florida courts have consistently held that strict compliance with the statutes governing service of process is required. *See, e.g.*, *Schupak v. Sutton Hill Associates*, 710 So. 2d 707, 708 (Fla. 4th DCA 1998); *Sierra Holding, Inc. v. Inn Keepers Supply Co., a div. of Holiday Inns, Inc.*, 464 So. 2d 652 (Fla. 4th DCA 1985); *Baraban v. Sussman*, 439 So. 2d 1046 (Fla. 4th DCA 1983).

Considering the status of this case as a removal action, the lack of objection as to the use of Florida substantive law on service of process, and this Circuit's case law, the Court will assess the sufficiency of process and the Motions to Quash under Florida law. *See Usatorres*, 768 F.2d at 1286.

    **I.**    **The Motions to Quash**

As an initial matter, "the core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *Henderson v. United States*, 517 U.S. 654, 672 (1996). To qualify as adequate, notice generally must "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). These principles will serve as the Court's guidepost in this case.

First, R Palace claims that the transfer of title to Red Diamond was "improper and fraudulent" [ECF No. 1-1 at 7]. Specifically, Plaintiff points to three key issues: (1) Anamar allegedly transferred ownership of the Unit for $100.00 to Red Diamond even though Manzalli alleged during the Arbitration Proceeding that the Unit was worth over $1.6 million; (2) the quit claim deed was executed on behalf of Anamar by Joao Manzalli de Sa, a family member of

Manzalli, who purportedly owned or controlled Anamar; and (3) the transfer apparently occurred on the eve of the final hearing in the Arbitration Proceeding. [ECF No. 1-1 at 13–14].

Indeed, the transfer of title, the unexplained mortgage, and Manzalli's claims that she resigned from directorship of the companies during the course of the arbitration all appear to be part of an improper scheme to avoid the arbitration awards. In any event, R Palace has pointed out in its Complaint that Anamar's transfer of the Unit was *void ab initio* pursuant to the Declaration of Condominium. [ECF No. 1-1 at 15]. Paragraph 16 of the Declaration states:

> 16. <u>Restrictions on Transfer of Interest in Apartments</u>. In order to maintain a community of congenial residents and thus protect the value of the apartments, the *transfer of interest* in apartment by any owner other than the developer *shall require a Certificate from the Association after Notice and Approval*, subject to the following provisions so long as the condominium exists in useful condition upon the land, which provisions each owner covenants to observe:
>
>> 16.1. <u>Notice to Association</u>.
>> A. <u>Sale</u>. An apartment owner intending to make a bona fide sale of his apartment or any interest therein *shall give to the Association or its designee notice of such intention, together with the name and address of the intended purchaser and such other information concerning the intended purchase as the Association may reasonably require*.
>>
>> 16.2. <u>Failure to give notice</u>. If the notice to the Association herein required is not given, then at any time after receiving knowledge of the transaction or event transferring ownership, possession or an interest of an apartment, the Association, or its designee, at its election and without notice *may approve or disapprove the transaction or ownership*.

[ECF No. 23-1 at 12–13] (emphasis added).

Defendants neither received a Certificate from the Association approving the transfer nor provided the required notice. [ECF No. 1-1 at 16]. Certainly, Anamar's decision not to abide by the Declaration—at the very least—delegitimizes the transfer to Red Diamond. This failure to follow the Association's guidelines, along with the potential hallmarks of fraud, leads to this

Court's conclusion that Anamar—not Red Diamond—continues to hold title of the Unit. Therefore, only service of process upon Anamar is at issue in this case.

### A. Arguments and Date of Service

Next, the Court must assess whether Anamar was properly served under Florida law. R Palace argues that it served Anamar through Manzalli as set forth in Fla. Stat. §§ 607.15101 and 48.081. [ECF No. 16 at 4–5]. To the extent that service is quashed, it sought leave to effectuate substitute service pursuant to Fla. Stat. §§ 48.161 and 48.181.

Anamar's Motion to Quash relies on a prior version of Fla. Stat. § 607.15101, stating that service was ineffective because Anamar "must be served via its registered agent" and that the company "does not have a registered agent within the state of Florida or the United States of America." [ECF No. 13 at 4]. Instead, it argues, service must be made in accordance with Fla. Stat. § 48.197 through the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. [ECF No. 20 at 6].

According to certified copies of Anamar's business filing obtained from the Registrar of Corporate Affairs of the British Virgin Islands (the "BVI Records"), Manzalli was director of Anamar on June 19, 2023. [ECF No. 16-1 at 2]. Red Diamond replaced Manzalli as director at an unknown date, the latest being August 17, 2023. [ECF No. 16-2 at 2]. Manzalli contests this date by presenting a resignation letter dated December 5, 2022. [ECF No. 20-2]. Defendants were served on July 4, 2023. [ECF No. 13-2 at 1]. Clearly, the parties are not aligned on Manzalli's date of resignation from Anamar.

Notably, at the October 11, 2023, hearing held on the present motions, Anamar's counsel could not confirm the date on which Manzalli resigned as director and did not provide any documentation in support of the purported December 5, 2022 resignation. Anamar has since provided an email from the Arbitrator dated May 2, 2023, confirming that Manzalli had resigned

7

and was no longer participating in the arbitration. [ECF No. 32 at 1]. In any event, however, the BVI official records prevail over Manzalli's self-serving resignation letter. *See Caicedo v. Food for Life Experience, Inc.*, 1:13-CV-00258-GRJ, 2014 WL 2991090, at *4 (N.D. Fla. July 2, 2014) (stating that "[a] corporation cannot avoid service of process by failing to formally change the public listing of its officers . . ..").

### B. Method of Service Under Florida Law

The current version of Fla. Stat. § 607.15101 states:

> (2) *Any notice or demand on a foreign corporation under this chapter may be given or made to the chair of the board*, the president, any vice president, the secretary, or the treasurer of the foreign corporation; to the registered agent of the foreign corporation at the registered office of the foreign corporation in this state; *or to any other address in this state which is in fact the principal office of the foreign corporation in this state*.

Fla. Stat. § 607.15101(2) (emphasis added).

According to the Florida Business Corporation Act, "Principal office" is defined as "the office (in or out of this state) where the principal executive offices of a domestic or foreign corporation are located as designated in the articles of incorporation or other initial filing . . .." Fla. Stat. § 607.01401(57). The only official documentation providing the corporate details of Anamar are the BVI Records. [ECF Nos. 16-1 and 16-2]. Upon reviewing the information provided therein, Anamar does not appear to hold a principal office—in the United States or elsewhere. Additionally, at the October 11, 2023, hearing, Anamar's counsel could not confirm whether Anamar conducts *any* business in the United States other than its ownership of the Unit. Thus, having no guidance on the location of the principal office of Anamar, the Court may reasonably operate under the assumption that the Unit itself is Anamar's principal office. Accordingly, Manzalli—as director of Anamar at the time of service—was properly served at the Unit.

### C. The Warranty Deed

The Warranty Deed dated December 5, 2000, identifies Anamar as grantee and Manzalli as purchaser of the Unit. [ECF No. 18-1 at 3]. It also states, however:

> Ms. Manzalli may hold title to the unit in a corporate name for tax purposes; however, *Ms. Manzalli will be treated as the only owner of the unit for all legal purposes under Florida Law* . . ..

[*Id.*] (emphasis added).

Manzalli agreed, by contract, to be treated as the owner of the Unit "for all legal purposes[,]" which includes service of process. *See Beach Towing Services, Inc. v. Sunset Land Associates, LLC*, 278 So. 3d 857, 864 (Fla. 3d DCA 2019) (stating that "[d]eeds are analyzed in the same manner as contracts."). [ECF No. 18-1 at 3]. As the "only owner of the unit[,]" Manzalli was put on notice of the suit on July 4, 2023, the date she was served. [*Id.*].

On the issue of service of process, the Court must be pragmatic. The purpose of service is to "supply notice" and provide defendant with "an opportunity to present their objection." *Henderson*, 517 U.S. at 672. Here, Anamar (and Manzalli) unequivocally received sufficient notice of the suit, providing it an opportunity to appear and defend against R Palace's claims.

## II. The Motion to Unwind the Fraudulent Mortgage and for Injunctive Relief

Finally, the Court turns to R Palace's Motion to Unwind the Fraudulent Mortgage Transaction and Enjoin Defendants Anamar and Red Diamond from Attempting to Slander Title to the Unit. [ECF No. 22]. Manzalli claims to have a mortgage from Red Diamond in the amount of $2.24 million secured by the Unit. [*Id.* at 1]. R Palace argues the mortgage is void. [*Id.* at 2–4].

The Court finds the mortgage fails for several reasons. First, the hallmarks of fraud are apparent. Manzalli averred to her disassociation from Anamar in December of 2022 and from Red Diamond in February of 2023, but the BVI Records state otherwise. [*See* § I(A)]. Second, Manzalli, who denies that she is a director of either company, now claims to hold a mortgage for more than

9

2.24 million dollars on the Unit. Third, the timing of the mortgage is also suspect, as it was recorded about one month after Manzalli was served and about two months after the Interim Award was issued. Most importantly, as has been established in this Order, Anamar—not Red Diamond—holds title to the property. [*See* § I].

In short, there is no valid mortgage to cancel, strike, or unwind because Red Diamond could not mortgage the Unit it did not own. *See Krugman-Kadi v. Wells Fargo Bank, N.A.*, 1:13-CV-204-MW-GRJ, 2013 WL 6388636, at *4 (N.D. Fla. Dec. 6, 2013), *report and recommendation adopted*, 1:13-CV-204-MW/GRJ, 2014 WL 37318 (N.D. Fla. Jan. 6, 2014) (holding that the court could not adjudicate plaintiff's request that a mortgage be considered null and void because defendant/mortgagee's interest in the property was extinguished after foreclosure); *Roberts v. Hart,* 573 So.2d 12 (Fla. 4th DCA 1990) (mortgage invalid where mortgagor did not own property at time he executed mortgage); *Gonzalez v. Chase Home Finance LLC,* 37 So.3d 955 (Fla. 3d DCA 2010) (mortgagor can convey no greater interest in property than he owns); *United States v. One Parcel of Real Estate at 3229 S.W. 23d St., etc.,* 768 F.Supp. 340 (S.D. Fla. 1991) (mere execution of mortgage is not evidence of any ownership of mortgaged property under Florida law); *Pasekoff v. Kaufman,* 392 So.2d 971 (Fla. 3d DCA 1981) (same).

### A. Preliminary Injunction

R Palace states in its Motion to Unwind that all the elements required for a preliminary injunction under Fed. R. Civ. P. 65 are met. [ECF No. 22 at 4–5]. To obtain a Preliminary Injunction, a party must demonstrate (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the plaintiff outweighs the potential harm to the defendant; and (4) that the injunction will not disserve the public interest.

*Keister v. Bell*, 879 F.3d 1282, 1287 (11th Cir. 2018) (quoting *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002)).

Based on the Motion to Unwind and the record, the Undersigned finds that a preliminary injunction is warranted and recommends the District Judge enjoin Defendants' attempt to encumber the Unit. *See* S.D. Fla. L. R. (Magistrate Judge Rule 1(d)); 28 U.S.C. § 636(b)(1)(B). First, R Palace has a strong probability of proving that the arbitration award—a binding and agreed-to procedure to resolve this dispute—should be confirmed. Second, R Palace faces a substantial threat of irreparable harm based on Defendants' consistently dodging the requirement to comply with the Interim Award by transferring title of the property at issue during the Arbitration Proceeding and mortgaging the property shortly after the Interim Award was issued. Third, the injury to R Palace takes the form of its inability to sell the property due to Defendants' actions. Defendants, on the other hand, cannot claim that its injuries would be greater than Plaintiff's. Indeed, the building's "physical degradation" poses a "Life Safety Threat," thereby eliminating Defendants' use and enjoyment of the property. [ECF No. 31]. For the same reason, the injunction will not disserve the public interest. At the hearing on the motions held on October 11, 2023, Defendants did not dispute Plaintiff's claim that the elements were satisfied.

Neither Defendant objected to R Palace's request for injunctive relief, and, as such, this case does not turn on the "resolution of bitterly disputed facts" requiring a preliminary injunction hearing. *Moon*, 577 F. App'x. at 936 (citing *All Care Nursing Serv., Inc.*, 887 F.2d 1538). "Where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1313 (11th Cir. 1998). Courts balance "speed and practicality versus accuracy and fairness" for cases between these two categories. *Bethune-Cookman, Univ.,*

*Inc. v. Dr. Mary McLeod Bethune Nat'l Alumni Ass'n, Inc.*, 22-14257, 2023 WL 3704912, at *4 (11th Cir. May 30, 2023) (quoting *McDonald's Corp.*, 147 F.3d at 1313). The Undersigned has resolved the service issue, and no other facts are in dispute at this point. As such, a preliminary injunction should issue.

Finally, the Undersigned finds that no bond is required. Fed. R. Civ. P. 65(c) provides that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The amount of the security is within the discretion of the trial court, and a court may elect to require no security to be posted at all. *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005). Anamar was served on July 4, 2023, and both Defendants were on notice of the injunctive relief sought as evidenced by their appearance at the October 11, 2023 hearing. Here, neither Defendant has provided evidence of a bond requirement. *See Harris v. Hous. Auth. of City of Daytona Beach,* No. 6:01–cv–254, 2001 WL 36404273, at *5 (M.D. Fla. Apr. 25, 2001) (not requiring a bond where the preliminary injunction would result in minimal potential harm to the defendant); *Univ. Books & Videos, Inc. v. Metro. Dade County,* 33 F.Supp.2d 1364, 1374 (S.D.Fla.1999) (not requiring a bond where the movant had a high probability of succeeding on the merits of its claim).

Therefore, the Undersigned hereby recommends that the District Judge enjoin Defendants Anamar and Red Diamond, their officers, employees, agents, representatives, attorneys, or any other person or entity acting through or on their behalf, from transferring title, mortgaging, or otherwise slandering title to the Unit.

## **CONCLUSION**

For the foregoing reasons, it is **ORDERED** that Anamar and Red Diamond's Motions to Quash Service [ECF Nos. 13 and 14] and R Palace's Motion to Unwind [ECF No. 22] are **DENIED**. Defendant Anamar, the actual owner of the Unit, was properly served through Manzalli.

It is **RECOMMENDED** that R Palace's Motion to Enjoin Defendants from slandering title to the Unit by further transferring ownership and mortgaging the Unit [ECF No. 22] be **GRANTED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(a), Defendants have **SEVEN** (7) days from the date of this Report and Recommendation to serve and file written objections, if any, with the District Judge. *See generally Jeffrey S. by Ernest S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507 (11th Cir. 1990).[3] Failure to timely file objections will bar a de novo determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and

---

[3] Rule 4(b) of the Magistrate Judge Rules, Local Rules for the Southern District of Florida, requires that a party file any objections to a magistrate judge's report and recommendation within fourteen (14) days of being served "or within such other time as may be allowed by the Magistrate Judge or District Judge." S.D. Fla. L. R. (Magistrate Judge Rule 4(b)). Where exigencies exist, a court may shorten the time for filing objections. *See Fed. Trade Comm'n v. Marcus*, 17-60907-CIV, 2019 WL 11506011, at *1 (S.D. Fla. Mar. 6, 2019) (providing seven days to object to the Report and Recommendation when exigencies existed); *United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (holding that trial court did not err in providing parties less than the [then-applicable] full ten-day period to file objections to the magistrate's report and recommendation where exigencies existed, stating that the [then-applicable] "[t]en days is a maximum, not a minimum"); *Hispanic Counseling Center, Inc. v. Incorporated Village of Hempstead*, 237 F. Supp. 2d 284, 290 (E.D.N.Y. 2002) (court may shorten time period for filing objections where exigencies exist). Here, exigencies exist because of R Palace's inability to close on a transaction for the sale of property due to Defendants' failure to abide by the Interim Award. [ECF No. 22 at 2–3].

legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 27th day of October, 2023.

*[signature]*

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc: **U.S. District Judge Roy K. Altman**; **and**

**All Counsel of Record**